Criminal Case Template








COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS




DONALD D. MAYNARD,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-03-00158-CR

Appeal from the

Criminal District Court No. 5

of Dallas County, Texas

(TC# F-0273253-KL)





O P I N I O N

            This is an appeal from a conviction for the offense of aggravated sexual assault of a child
under fourteen. After entering a plea of guilty, Appellant was sentenced by a jury to the maximum
punishment permitted: life imprisonment and a $10,000 fine. We affirm the judgment of the trial
court.
I. SUMMARY OF THE EVIDENCE
            At trial Donald Maynard, Appellant, pled guilty to the offense of aggravated sexual assault
of M.D., a child under fourteen. The State’s evidence during the punishment phase showed that
Maynard, a sixty-one-year-old man, put his mouth on M.D’s penis around twenty-four times over
a span of nearly two years. Maynard himself testified and confessed to these crimes. He admitted
that his sexual relationship with M.D. stopped only because he was arrested.
            The State also presented evidence of another child victim named J.D. J.D. testified that he
met Maynard when he was eight years old (in 1991) at a VFW bar frequented by his family. At the
invitation of Maynard, J.D. and his brother went to Maynard’s apartment to play video games. J.D.
claimed that while his brother was in the bedroom playing video games, Maynard told J.D. to get
down on his hands and knees, removed his underwear, fondled his penis, and penetrated his anus
with his finger. Maynard then went to the bathroom and returned with a stick which he used to
penetrate J.D.’s anus. On other occasions, Maynard forced him to perform oral sex, that there were
times when Maynard penetrated him anally with his penis, and that Maynard took photographs of
him barely clothed and naked. According to J.D., such abuse continued until he was fifteen, when
he fled from Maynard’s apartment and never returned. He estimated that Maynard sexually assaulted
him between 225 to 275 times over a seven-year-span. J.D. said that as a result of the abuse, he
currently has a bleeding problem in his anal cavity, though he has not seen a doctor.
            The State introduced into evidence Maynard’s voluntary statement given to the police. In
it, Maynard said he met J.D. when J.D. was eight or nine years old. He admitted that he put J.D.’s
penis in his mouth on one occasion. Maynard stopped seeing J.D. because he “had to stop with the
sex thing.” At trial, Maynard admitted to the act described in his statement but denied any other
sexual contact, such as anal sex, anal penetration with any object, or taking nude photographs of J.D.
He denied any other sexual relationships with any other men or boys. While he denied any sexual
interest in young boys, he could not explain why he did what he did with M.D. and J.D.
                                                              II. DISCUSSION
            In Issue Nos. One and Two, Maynard contends that the introduction into evidence of a
recorded telephone conversation between J.D. and Maynard and a transcript of that conversation
violated his Sixth Amendment right to confront witnesses against him.
            As part of the police investigation of Maynard, J.D. arranged to record a phone conversation
with Maynard. However, the recording equipment malfunctioned and the call was not recorded. 
Nevertheless, J.D. testified as to the substance of this conversation. He asked Maynard if he felt
sorry for what he did. Maynard responded that he was sorry. He knew things went too far and he
should have stopped while he was ahead.
            Because this conversation was not recorded, J.D. made a second call the next day. This
conversation was successfully recorded. After questioning J.D. about the existence of the tape, the
State introduced the tape recording and a transcript of the conversation into evidence. Maynard
objected, claiming that both were irrelevant, cumulative, unfairly prejudicial, that they would
confuse the issues and mislead the jury, and would also deny him his Sixth Amendment right to
confrontation of the witness. The State responded that the tape and transcript were relevant
to determining an appropriate punishment, especially since they included admissions made by
Maynard. Furthermore, since J.D. was available for cross-examination, Maynard was not denied
his right of confrontation. Maynard’s objections were overruled and the recording and
transcript were subsequently published to the jury. After the State passed the witness, defense
counsel cross-examined J.D.
            On appeal, Maynard argues that because J.D. was available to testify, the use of the recorded
telephone conversation in lieu of live testimony by J.D. violated his Sixth Amendment right of
confrontation. We disagree. 
            The Confrontation Clause of the Sixth Amendment provides that “[i]n all criminal
prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.” 
U.S. Const. amend. VI. The primary interest protected by the Confrontation Clause is a defendant’s
right to cross-examine witnesses. Lopez v. State, 18 S.W.3d 220, 222 (Tex.Crim.App. 2000). While
Maynard had the opportunity to cross-examine J.D. and did, in fact, cross-examine J.D., he
nevertheless maintains that his right of confrontation was violated. He argues that any out-of-court
statements are admissible only upon a showing that the declarant is unavailable, and the fact that J.D.
testified reveals that J.D. was available. He concludes, therefore, that the recorded conversation
was inadmissible. He cites in support of this contention Long v. State, 742 S.W.2d 302
(Tex.Crim.App. 1987). Yet, if the out-of-court declarant testifies at trial and is subject to full and
effective cross-examination, there is no need for a showing of unavailability. See Briggs v. State,
789 S.W.2d 918, 922 (Tex.Crim.App. 1990)(quoting Buckley v. State, 786 S.W.2d 357, 360
(Tex.Crim.App. 1990)). 
            Maynard argues, nevertheless, that the fact that J.D. testified did not vindicate his right of
confrontation because he was forced to choose between allowing the state to present its case twice
or waiving the opportunity to cross-examine on the contents of the tape. He again relies on Long v.
State to support this contention. However, Long is readily distinguishable from the instant case. In
Long, the State did not present the complainant/declarant as a witness during its case-in-chief. 
Long, 742 S.W.2d at 320. Accordingly, the Court focused on the dilemma of either forcing the
defendant to call his accuser as a witness in order to question her or waiving the opportunity to cross-examine. Id. at 320. Placing the defendant in this difficult position amounted to a violation of his
right of confrontation and due process. Id. However, when the declarant testifies during the State’s
case-in-chief and the defendant is permitted to cross-examine him, there is no violation of the
right of confrontation. See Briggs, 789 S.W.2d at 922; Fultz v. State, 940 S.W.2d 758, 761-62
(Tex.App.--Texarkana 1997, pet. ref’d); Hemphill v. State, 826 S.W.2d 730, 732 (Tex.App.--Houston [14th Dist.] 1992, pet. ref’d); Mares v. State, 758 S.W.2d 932, 934 (Tex.App.--El Paso
1988, pet. ref’d). When the witness is called during the State’s case-in-chief, the unfair dilemma of
the defendant being forced to call the witness and allowing the State to present its evidence twice
dissolves. It becomes simply a matter of questioning the witness on cross-examination or not. Here,
J.D. testified during the State’s case-in-chief. Because J.D. testified during the State’s case-in-chief
and was subject to full cross-examination, Maynard’s right of confrontation was fully vindicated. 
Issues Nos. One and Two are overruled.
            In Issues Nos. Three and Four, Maynard asserts that the probative value of the tape and the
transcript was substantially outweighed by the danger of unfair prejudice, confusion of issues, and
misleading the jury.
            In the recorded telephone conversation, J.D. asked Maynard if he was sorry for what he did. 
Maynard indicated that he was sorry and said, “The horseplay just went too far--you know--I like the
hell out of you.” When J.D. asked what he meant by “horseplay,” Maynard responded, “Well, that’s
what I call it. If you call it something else, O.K.” The following exchange subsequently occurred: 
            [J.D.]               But, uh, I mean -- it was sex. I mean, I was --
             [Maynard]       Yeah.
            [J.D.]               8, 9, 10 years old. I mean --
            [Maynard]       Hey.
            [J.D.]               Huh?
            [Maynard]       Come and talk to me in person.
When J.D. asked Maynard if he ever thought he was hurting J.D., Maynard answered, “No.” J.D.
proceeded to tell Maynard that he was worried about giving his girlfriend a sexually transmitted
disease and wanted to know if Maynard had anything. Maynard said if he had anything, the doctors
would have found it when he recently had blood tests done. Throughout the conversation, Maynard
asked J.D. to come talk to him in person and to come to his apartment. 
            During the punishment phase of trial, any evidence the court deems relevant to sentencing
is admissible. See Tex.Code Crim.Proc.Ann. art. 37.07, § 3(a)(1)(Vernon Pamphlet 2004-05). 
Relevant evidence is that which assists the fact finder in assessing the appropriate sentence under
the circumstances, including evidence of the defendant’s personal responsibility and moral guilt. See
Rogers v. State, 991 S.W.2d 263, 265 (Tex.Crim.App.1999); Stavinoha v. State, 808 S.W.2d 76, 79
(Tex.Crim.App. 1991).
            While Rule 403 favors the admissibility of all relevant evidence, relevant evidence may be
excluded if its probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence. Tex.R.Evid. 403; Hayes v. State, 85 S.W.3d 809, 815
(Tex.Crim.App. 2002). Unfair prejudice arises from evidence that has an undue tendency to suggest
that a decision be made on an improper basis, such as an emotional one. Montgomery v. State, 810
S.W.2d 372, 389 (Tex.Crim.App. 1990). The twin dangers of confusion of the issues and misleading
the jury arise when admitting certain evidence tends to sidetrack the jury into disputes only
tangentially related to the issues in the case. Wiley v. State, 74 S.W.3d 399, 407 n.21
(Tex.Crim.App.), cert. denied, 537 U.S. 949, 123 S.Ct. 415, 154 L.Ed.2d 294 (2002). We must
consider several factors in determining whether the danger of the negative impact substantially
outweighs the probative value of the evidence. These include (1) how compellingly the evidence
serves to make more or less probable a fact of consequence; (2) the potential the evidence has to
impress the jury in some irrational but indelible way; (3) how much trial time the proponent needs
to develop the evidence; and (4) how great is the proponent’s need for the evidence. Mozon, 991
S.W.2d 841, 847 (Tex.Crim.App. 1999). The trial court has wide latitude in ruling on the prejudicial
nature of the evidence. Montgomery, 810 S.W.2d at 389-90. We therefore review a trial court’s
decision to admit evidence under an abuse of discretion standard and its ruling will not be disturbed
unless it is outside the zone of reasonable disagreement. Mozon, 991 S.W.2d at 846; Arzaga v. State,
86 S.W.3d 767, 773-74 (Tex.App.--El Paso 2002, no pet.). While doing so, we are cognizant that
during the punishment phase there are no discrete factual issues. Rather, deciding what punishment
to assess is a normative process, Rogers, 991 S.W.2d at 265.
            Bearing in mind that the issue before the jury was Maynard’s punishment, where the focus
is on the personal responsibility and moral blameworthiness of the defendant, we hold that the trial
court did not abuse its discretion in admitting the taped conversation and the transcript. The
conversation was probative of the extent of Maynard’s sexual assault, his treatment of a former
victim, his views of the assault, and his level of remorse, all of which would assist the jury in
assessing an appropriate punishment. The conversation tended to show that Maynard had very little
remorse, that he denied the wrongfulness of his actions, and that it was all very casual to him. The
extent of the abuse was contested during the punishment phase. Maynard confessed to one act
sexual assault while J.D. alleged over 200. A possible inference from the phone conversation is that
there was more than one instance of sexual contact between Maynard and J.D., that it was more than
oral sex, and that Maynard had did not recognize the heinous nature of his offense. While it was by
no means conclusive, the conversation tends to support J.D.’s claims and the State’s theory that
Maynard is a habitual victimizer of young children with a lack of appreciation for the extent of his
wrongdoing. Such evidence is clearly prejudicial in that it shows Maynard to be a bad person, but
this does not make it unfairly prejudicial. See Nenno v. State, 970 S.W.2d 549, 564 (Tex.Crim.App.
1998), overruled on other grounds, State v. Terrazas, 4 S.W.3d 720, 727 (Tex.Crim.App. 1999).
            Maynard argues that the taped conversation was unfairly prejudicial because the conversation
was ambiguous. From it, one cannot tell whether Maynard was admitting to the one incident that
he described in his statement and testified to or the 225 incidents that J.D. mentioned. Likewise,
one cannot tell whether Maynard admitted to oral sex or anal sex. According to Maynard, this
ambiguity diverted the jury’s attention away from the concrete allegations and invited the jury to set
a life sentence based on speculation. First, it must be noted that this ambiguity was not a function
of the taped conversation, but a function of the competing testimony of J.D. and Maynard. The tape
can be seen as a means of resolving that ambiguity. Second, in making this claim of ambiguity,
Maynard essentially admits that it is reasonable to interpret the evidence as proof of an extended
period of abuse. It was the task of the jury to determine whether the evidence offered was sufficient
to prove that abuse beyond a reasonable doubt. See Arzaga, 86 S.W.3d at 781. If the jury accepted
that evidence, it was not an improper basis for determining an appropriate punishment. On the
contrary, it was precisely the type of information the jury needed to determine Maynard’s
blameworthiness. Nor is there anything inflammatory in the tape itself that would leave an irrational
impression in the mind of the jury or lead them off the main issue during the punishment phase of
trial: an appropriate punishment. We hold that the trial court did not abuse its discretion in admitting
the tape recording and the transcript into evidence during the punishment phase. Issues Nos. Three
and Four are overruled.
            Having overruled each of Appellant’s issues on review, we affirm the judgment of the trial
court.

January 27, 2005                                                  
                                                                                     RICHARD BARAJAS, Chief Justice

Before Panel No. 4
Barajas, C.J., Larsen, and McClure, JJ.
(Larsen, J., not participating)

(Do Not Publish)